UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DANIEL JOSEPH SOTO,              )
                                 )
    *Plaintiff*              )
                                 )
v.                               )     No. 2:14-cv-28-JHR
                                 )
CAROLYN W. COLVIN, *Acting*      )
*Commissioner of Social Security*, )
                                 )
    *Defendant*              )


***MEMORANDUM DECISION*[1]**

In this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal, the plaintiff contends that the administrative law judge improperly interpreted raw medical evidence, assigned him a mental residual functional capacity ("RFC") that is unsupported by medical opinion, improperly rejected the opinions of two treating physicians, and improperly evaluated his credibility. After carefully considering each of the plaintiff's arguments, I affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.2(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on December 10, 2014, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 12.

1

requirements of the Social Security Act only through March 31, 2010, Finding 1, Record at 16; that he suffered from degenerative disc disease, affective disorder/depressive disorder NOS (Not Otherwise Specified), anxiety-related disorder/anxiety disorder NOS, and substance addiction disorder/opioid dependence, status unclear, impairments that were severe but which, considered separately or in combination, did not meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, *id*. at 16-17; that he had the RFC to perform light work, except that he could sit up to six hours and stand or walk up to four hours in an eight-hour day with normal breaks, could occasionally climb ramps and stairs but never ladders, ropes, or scaffolds, could occasionally balance, stoop, kneel, crouch, and crawl, must avoid unprotected heights and irregular terrain, could understand, remember, and execute simple instructions and tasks on a consistent schedule to complete a workday and workweek, could interact with supervisors and coworkers but not with the general public, and could adapt to occasional changes in the workplace, Finding 5, *id*. at 19; that he was unable to perform any past relevant work, Finding 6, *id*. at 22; that, given his age (42 on the date of alleged onset, August 20, 2005), limited education, work experience, and RFC, and using the Medical-Vocational Guidelines of Appendix 2 to 20 C.F.R. Part 404, Subpart P (the "Grid"), as a framework for decision-making, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 22-23; and that, therefore, he had not been under a disability, as that term is defined in the Social Security Act, at any time from August 20, 2005, through the date of the decision, November 15, 2012, Finding 11, *id*. at 23. The Appeals Council declined to review the decision, *id*. at 1-3, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.,* 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Mental RFC

The plaintiff first contends that, because the administrative law judge rejected the findings of his mental health care providers, as did the state-agency reviewers, his finding that the plaintiff suffered from severe mental impairments, including depression and anxiety, with associated limitations included in the RFC assigned to the plaintiff, "impermissibly interpreted raw medical evidence" and "simply made up his own Mental RFC, which he is not entitled to do." Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Itemized Statement") (ECF No. 8) at 2-3.

The plaintiff also complains of the administrative law judge's asserted failure to explain the mental limitations included in the RFC. *Id*. at 3. He contends that the administrative law judge

did not comply with Social Security Ruling 96-8p in this regard. *Id.* He also argues that the administrative law judge did not "recount[] accurately" mental health records from Sweetser because he "does not mention the numerous Global Assessment of Functioning ("GAF") scores [o]f 40 to 42" nor does he mention record references to anxiety. *Id.* at 4. Finally, he asserts that these errors are not harmless because the vocational expert testified that the limitations set by Dr. Pease would eliminate the jobs upon which the administrative law judge relied at Step 5 of the sequential evaluation process. *Id.*

In response, the defendant first notes that the plaintiff began treating with Dr. Pease after the state-agency physicians had rendered their opinions. Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 9) at 6. From all that appears, therefore, the administrative law judge's decision not to rely on the reports of the state-agency physicians, standing alone, cannot constitute reversible error. The plaintiff relies on the reports of Dr. Julie Pease, a psychiatrist, and Dr. Peter F. McGuire, a family practitioner, with respect to his mental RFC. Itemized Statement at 2-4.

As the administrative law judge pointed out, Record at 22, Dr. McGuire, who saw the plaintiff at a free clinic, provides little in his records beyond the plaintiff's own reports to support his diagnosis, *id.* at 926, that severe depression, along with swollen legs and limited English skills, prevented the plaintiff from any work as of March 14, 2011.[2] With respect to Dr. Pease, the administrative law judge explained in considerable detail his reasons for rejecting her opinions about the plaintiff's mental limitations. *Id.* at 21-22.

---

[2] In addition, this report would be of no assistance to the plaintiff with respect to his application for SSD, for which his eligibility expired on March 31, 2010. Record at 16. The same is true of the opinions of Dr. Pease, who did not begin to treat the plaintiff until May 2011. *Id.* at 21. Thus, for the purposes of his SSD claim, the plaintiff has offered no evidence concerning his mental limitations, and the fact that the administrative law judge included some mental limitations in his RFC means that the RFC was more favorable to the plaintiff for that period than the record would support. Accordingly, the mental RFC must be affirmed as to the SSD claim. *E.g., Paquin v. Colvin*, No. 1:13-cv-360-JDL, 2014 WL 6679123, at *3 (D. Me. Nov. 25, 2014).

4

Contrary to the plaintiff's assertion, Itemized Statement at 3, the administrative law judge does "give [an] explanation or basis . . . for choosing the Mental RFC limitations [he] does." Itemized Statement at 3. He states that his RFC assessment is supported by several specific medical reports, among which those of Sweetser Services concern mental impairment. Record at 22. Additionally this court has consistently held that if, despite the fact that the administrative law judge has rejected all of the medical evidence submitted by the claimant of any limitations caused by a mental or physical impairment, the administrative law judge included such limitations in the RFC that he assigned to the plaintiff, a claimant may not obtain a remand on the basis of an RFC that is more favorable than the evidence would otherwise support.[3] *E.g., Bowden v. Colvin*, No.1:13-cv-201-GZS, 2014 WL 1664961, at *4 (D. Me. Apr. 25, 2014). That is the situation presented here.[4]

The plaintiff also faults the administrative law judge for failing to mention "the numerous Global Assessment of Functioning ('GAF') scores [o]f 40 to 42, which are entirely consistent with inability to work[.]" Itemized Statement at 4. He cites five pages of the Sweetser records in support of this statement. *Id.* These are references to the plaintiff's GAF score "On Admission" and either "Effective as of: 09/12/2011" or "Effective as of: 01/10/2012." Record at 760, 762, 765, 780, 903. This data is inapplicable to the plaintiff's SSD claim, for which his eligibility expired in 2010. *Id*. at 16. Dr. Pease did assess GAF scores of 40[5] on September 12, 2011, *id*. at

---

[3] The fact that this is the applicable standard upon which the defendant's argument is based distinguishes this case from my recent decision in *Bernier v. Colvin*, No. 1:14-cv-29-JHR (ECF No. 19), where the commissioner argued only that the administrative law judge's mental RFC was within the scope of a common sense evaluation of the medical evidence.

[4] In addition, the plaintiff fails to identify the specific raw medical evidence that he alleges that the administrative law judge improperly interpreted. *See Bowden*, 2014 WL 1664961, at *4.

[5] A GAF score represents "The clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id*. The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation

762, and 42 on August 15, 2012, *id*. at 904, at which time she also noted the plaintiff's report that his psychiatric medications "are working well for him," but, as the administrative law judge noted, *id*. at 21, in May 2012 she stated that the plaintiff's anxiety and depression were "[n]ow well controlled with current medication[.]" *Id*. at 780.

A GAF score of 42, assigned to the plaintiff despite his report that his psychiatric medications were working well for him, indicates serious symptoms that would appear to be inconsistent with Dr. Pease's observations of the same date that "he appears to be coping fairly well psychologically," "[m]ood good despite discomfort, affect relatively bright. Alert and oriented. No suicidal ideation or intent. No delusions, hallucinations. Insight fair, judgment good." *Id*. at 902. In general, Dr. Pease's records do appear to be internally inconsistent, as the administrative law judge concluded. *Id*. at 21. Under these circumstances, and with no citation to authority to support the plaintiff's apparent contention that failure to address GAF scores in a treating medical professional's records is an error that requires remand, *but see LaFontaine v. Astrue*, No. 1:10-cv-527-JAW, 2011 WL 4459197, at *4 (D. Me. Sept. 25, 2011) ("A GAF score, standing alone, does not necessarily indicate an inability to work or to perform specific work-related functions."), the plaintiff is not entitled to remand on the showing made.

In this regard, this court has consistently held that, despite the well-known precept that an administrative law judge may not interpret raw medical evidence on her own, as admitted by the defendant in this case, Opposition at 7, the burden remains with the claimant to show that such an error is not harmless. *See, e.g., Plourde v. Colvin*. No. 1:12-cv-194-JAW, 2013 WL 1345519, at

---

of death). *Id*. at 34. A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id*. (boldface omitted). A GAF score of 31 to 40 reflects "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." *Id*. (boldface omitted).

*6 (D. Me. Mar. 14, 2013) (Step 2); *Fernald v. Social Sec. Admin. Comm'r*, No. 1:11-cv-00248-NT, 2012 WL 1462036, at *2 (D. Me. Apr. 19, 2012); *Henderson v. Astrue*, Civil No. 08-167-P-H, 2009 WL 214569, at *4 (D. Me. Jan. 27, 2009) (Step 4).

### B. Treating Source Opinions

The plaintiff next contends that the administrative law judge committed reversible error in rejecting the opinions of Dr. Pease and Dr. McGuire. Itemized Statement at 4-5. However, the itemized statement does not discuss at all the rejection of Dr. McGuire's opinion,[6] and the court, therefore, can only consider that issue to be waived. *See, e.g., LeBlanc v. Colvin,* No. 2:13-cv-348-JDL, 2014 WL 5431567, at *4 n.5 (D. Me. Oct. 24, 2014).

With respect to Dr. Pease, the plaintiff repeats his contention that the failure to mention the GAF scores assigned to the plaintiff by Dr. Pease "invalidates" the rejection of her opinion and asserts that "some irregularities" in her records concerning the plaintiff's use of narcotics do not provide "a basis for discrediting Dr. Pease's opinion as to Plaintiff's limitations," but does not identify which of those limitations would require an RFC that would render him incapable of any work. Itemized Statement at 5. I have already rejected the plaintiff's argument with respect to the GAF scores. The administrative law judge gave the plaintiff's "less than forthcoming" statements to Dr. Pease about his drug abuse as only one of several reasons for rejecting her mental capacity assessment. Record at 21. Excluding that single reason would not require acceptance of her assessment.

The plaintiff is not entitled to remand on this basis.

---

[6] The itemized statement says in this section, in full, about Dr. McGuire that "[t]he Decision errs in rejecting the opinions of Dr. Pease and Dr. McGuire, discussed above." Itemized Statement at 4. The only "discussion above" about Dr. McGuire's opinion is another single sentence: "Peter F. McGuire, M.D., of Oasis Health Center, completed a General Assistance form dated 3/4/2011 indicating inability to work even 20 hours per week due to Depression and swollen legs (R. 926)." *Id*. at 2-3. Even setting aside the facts that Dr. McGuire is a family practitioner, not a psychiatrist, and that opinions on the ability to work are reserved to the commissioner, this "discussion" is not sufficient to present an issue for the court's resolution.

### C. Credibility

The plaintiff's final challenge is to the administrative law judge's evaluation of his credibility. Itemized Statement at 5-6. In conclusory fashion, the plaintiff asserts that "possible inconsistencies as to substance history and incarceration" on his part, as noted by the administrative law judge, Record at 20-21, "do not excuse [t]he Decision's one-sided discussion." Itemized Statement at 5-6. He does not suggest what specific evidence upholding his credibility should have been discussed in order to make the administrative law judge's consideration well-rounded.

Evidence of a claimant's lack of candor is, by its very nature, likely to be "one-sided." There is nothing objectionable in the administrative law judge's discussion of his reasons for finding the plaintiff less than credible in this case. Contrary to the plaintiff's allegations, the administrative law judge did not use "a finding of lack of credibility [as] a replacement for having a medical basis for the RFC, or for an erroneous rejection of treating source opinion[.]" *Id*. at 6. Of course, a treating source opinion should be rejected to the extent that it is based on false information provided by the patient.

The plaintiff has demonstrated no error in the administrative law judge's assessment of his credibility.

### II. Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 5th day of January, 2015.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

8